(18 Misc. Rep. 278.)

## FRENCH v. CITY OF SYRACUSE.

(Supreme Court, Trial Term, Onondaga County.   October, 1896.)

MUNICIPAL CORPORATIONS—CONTRACTS.

   A provision, in a contract with a city to build sewers, that the work should
   be done "at such times and seasons as may, from time to time, be directed
   by the commissioner of public works," does not, after the date fixed for com-
   pleting the work, preclude a recovery by plaintiff for work already done, where
   he was prevented from completing his contract through the failure of the city
   to open a street.

Action by Mansfield J. French against the city of Syracuse on a contract for work done and materials furnished.   Judgment for plaintiff.

George W. Driscoll, for plaintiff.
Charles E. Ide, for defendant.

HISCOCK, J.   This action is brought by plaintiff, as assignee of a contract made by one Street with the defendant, to recover for certain work and material done and furnished under said contract, certain extra work and material, certain profits of which it is claimed plaintiff has been deprived by reason of the refusal of defendant to allow him to complete a portion of his contract.   There is very little dispute about the facts, and the main—almost only—contention in the case arises over the construction of certain portions of the contract, and of the relative rights of the parties thereunder. The substantial facts bearing upon this question are as follows:. The contract made by plaintiff's assignor with defendant provided, among other things, for the construction "of sewers in Midland ave- nue, between West Onondaga street and Bellevue avenue." The notice by the city to contractors for bids upon the work and the bid for the contract in question more particularly specified as part of the work the construction of a "sewer in the center line of a proposed street, across lands of Charles H. Alvord and others," etc.   As mat- ter of fact, at the time this contract was let the street had not been opened, and since the letting defendant has been unable either to complete the opening of the street or to secure the right to enter upon the lands along the proposed line of it for the purpose of having this sewer laid, although it has sought with due diligence to ac- complish these results.   The contractor, having completed, so far as practicable, the remainder of the work called for by his contract, has been prevented from completing the same in the respect above indicated.   The city and its officer, the commissioner of public works, having been unable to procure the laying out of the street, or per- mission to enter upon the lands in the line thereof, have necessarily been unable to give plaintiff or his assignor the opportunity to so complete his contract.   The commissioner of public works, although requested, has refused to give a certificate of final completion of the work such as is provided for by the contract, claiming the right, un- der certain provisions of the contract, on account of the obstacles which have arisen in connection with the aforesaid street, to suspend

operations under and completion of this contract until such time as proceedings to open the street may have been brought to a termination.

Plaintiff probably is not entitled to a certificate of final completion of the work under the contract. As matter of fact, the work has not been completed, and therefore it cannot be well said that the commissioner of public works has arbitrarily and willfully refused to give one. The question rather seems to me to be whether the city has unjustifiably failed to complete its part of a contract, and delayed the contractor in fulfilling his engagements, so that he is entitled to immediate relief by this law suit without completion of the original contract; or whether, as claimed by it, the city had a right, under the contract, for the reasons above stated, to suspend operations under the contract until some future day. From an examination of the clauses involved in this question, I incline to the opinion that the contention of plaintiff, rather than of the defendant, is well founded. There was nothing in the contract, or the proposal and bid which preceded it, which gave notice to plaintiff's assignor that the defendant was not in position to make the contract in question, or that his right to complete it was subject to the contingency of the street being opened. In the absence of such notice, he had a right to assume that defendant was in position to make the contract, and ready to fulfill its part thereof, by giving him access to the place where his work was to be done. Mansfield v. Railroad Co., 102 N. Y. 205, 6 N. E. 386; Allamon v. Mayor, etc., 43 Barb. 33. When, therefore, the defendant failed or refused to give plaintiff an opportunity to lay the sewer in the proposed street, it violated its contract, unless the provisions thereof permitted it to indefinitely suspend work until it could complete its proceedings for opening the street. As above stated, I do not believe that this construction is to be placed upon such provisions. The provision especially relied upon by defendant for this effect reads as follows: "It is further agreed that the work [referred to in the contract] shall be commenced and carried on at such points, and in such order of precedence, and at such times and seasons, as may, from time to time, be directed by the commissioner of public works [of said city]." To obtain a proper construction of this clause, it must be read in connection with others found in the contract. By class A the contractor "agrees to commence the work herein required to be done within ten days after the signing of this contract, and at his own proper cost and expense, and on or before May 1, 1894, to do and complete the work," etc. By clause J it is provided that he is to pay three dollars per day as liquidated damages for every day the work may be incompleted beyond the above stipulated time for completion. By clause T he agrees to make certain repairs "if at any time * * * from the date of the final completion of the work contemplated in this contract, any part of said work shall" require repairs. While most of the covenants and agreements in this contract are by and upon the part of the contractor, still the city, by entering into and accepting said contract, assumes certain obligations thereunder. In the absence of some express provision

to the contrary, it was just as much bound to a completion of the work upon May 1, 1894, as was the contractor. McMaster v. State, 108 N. Y. 542, 554, 15 N. E. 417, 422. Under the construction claimed by defendant for clause C, it would have the contractor substantially at its mercy. · For any reason utterly disconnected with the contract, and utterly beyond the contemplation of the party making it, it could suspend the operation of the contract for weeks or months, or even years, until all of the conditions under which the contract was made had been changed. The only possible limit to its right so to do under the construction claimed by defendant would be fraud or bad faith. While, of course, parties have a right to make such lawful contracts as they see fit, still where there is uncertainty or doubt as to the meaning of words or phrases used in the contract, the court will take into consideration the fact that a construction contended for would make the contract unreasonable, and place one of the parties entirely at the mercy of the other. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391. And it seems that in this case, taking into account the whole contract, and especially the clauses hereinbefore specifically referred to, it would be an unreasonable construction to hold that the city, acting through its commissioner of public works, had a right indefinitely to prevent plaintiff from completing his contract, until it could secure possession of the proposed street. Nor, in reaching this conclusion, do I lose sight of the fact that that clause which calls for completion of the contract on or before May 1, 1894, concluded with the words, "in the manner and under the conditions and requirements hereinafter specified," clause C, relied upon, being found thereafter in the contract. I do not think that the words so quoted in connection with the agreement for the completion of the work were intended to make such completion entirely subject to the will of the commissioner, as claimed by defendant.

In McMaster v. State, heretofore cited, the court discusses the effect of a clause in the contract in behalf of the state by which the managers representing the state reserved the right to make any change they should deem proper in the plans and specifications of the buildings to be erected, and under which the privilege was claimed to change from stone facings to brick with stone trimmings. The court say, at page 551, 108 N. Y., and page 420, 15 N. E.:

"If we should suppose that * * * this clause [just referred to] must be taken as controlling the construction of both contracts, * * * yet we are of opinion that it cannot have the effect claimed for it, and that it did not authorize the change made. What change did the state reserve the right to make? It certainly had no right to omit entirely the construction of all or any of the buildings. * * * The general character of the buildings could not be changed so that the buildings would not be the same contracted for. * * * Under such a reservation, could a building planned for five stories be reduced to two? * * * We are clear that authority for such extensive changes could not be found in such language."

The construction claimed by defendant for the clauses in question in this case would be much more radical and far-reaching than that contended for and denied in the case just quoted.

If I am right that the defendant unlawfully prevented plaintiff

from completing his contract, then he is entitled to bring this action at once, and the arguments which might be applicable in the case of a completed contract, upon the subject of obtaining a certificate of final completion, etc., lose their importance.    Jones v. Judd, 4 N. Y. 411, 414.

Some reference is made in defendant's brief to plaintiff's lack of right to recover for extra work, because no basis therefor was laid under the provisions of the contract.    The stenographer's minutes have not been supplied to me, and I do not remember whether there was any contest with reference to allowance for extra work or not. If there is any controversy upon that subject, the minutes can be supplied to me, and I will settle it when findings are signed.

Judgment for plaintiff.